**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| S.S.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DEZARAE COLLINS,<br><br>　　　　　Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 23-0892 (KMW-AMD)<br><br>**OPINION** |

**Daniel Szalkiewicz, Esquire**
Daniel Szalkiewicz & Associates, P.C.
23 West 73rd Street
Suite 102
New York, NY 10023
*Counsel for Plaintiff S.S.*

**WILLIAMS, District Judge:**

　　This matter comes before the Court on a Motion for Default Judgment ("Motion") filed by Plaintiff S.S. ("Plaintiff") seeking entry of judgment against Defendant Dezarae Collins ("Defendant") pursuant to Federal Rule of Civil Procedure 55(b)(2). As Defendant has yet to appear or defend this action, the instant Motion is unopposed. The Court has decided the Motion after considering the written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons that follow, the Court **GRANTS** the motion and enters default judgment against Defendant and in favor of Plaintiff. The Court defers judgment on damages and will schedule a hearing to address the specific relief Plaintiff seeks under 15 U.S.C. § 6851 and N.J.S.A. 2A:58D-1.

I.   BACKGROUND

On February 16, 2023, Plaintiff initiated the instant action after Defendant disseminated intimate images and videos of Plaintiff. *See generally* Compl. Plaintiff's Complaint alleges that sometime in 2015, the Parties engaged in a short-term, long-distance relationship during which time Plaintiff sent Defendant several videos and images of his naked body. Compl. ¶ 13. Defendant "assured Plaintiff the images would remain private and expressly agreed not to share them with anyone without Plaintiff's consent." *Id.* ¶ 1. When Plaintiff no longer wished to date Defendant, Defendant "embarked on a years-long course of harassment" in 2016, which included continuously calling Plaintiff's work place, emailing and contacting his current girlfriend on her cell phone and at her place of business, and texting Plaintiff's family members from anonymous phone numbers. *Id.* ¶¶ 14-15. For a period of time, Defendant called Plaintiff's family members upwards of 250 times daily. *Id.* ¶ 17.

In 2022, Defendant's conduct escalated when she began sending intimate images and videos of Plaintiff to his family members, his girlfriend, and his girlfriend's family. *Id.* ¶ 18. The images and videos depicted Plaintiff performing sexual acts and Plaintiff's intimate body parts. *Id.* ¶¶ 21-37, 46. Defendant disseminated two videos and twelve images of Plaintiff over 77 times through anonymous text messages over the course of three weeks. *Id.* ¶ 18. Plaintiff also posted an intimate image of Plaintiff on Craigslist with the following caption: "Innocent horny man needing company. Last 2 marriages failed. Need somebody to release stress and have fun with. Will send pics and videos. Let me know what you need[.]" *Id.* ¶ 19 (alteration in original).

On January 3, 2023, Plaintiff filed a domestic violence action against Defendant in New Jersey state court. *Id.* ¶ 20. The following month, the state court issued a final restraining order "prohibiting [Defendant] from having any communications with Plaintiff, his mother, sister, and

girlfriend" and prohibiting Defendant "from harassing, threatening, and stalking the same individuals." *Id.*

In the Complaint, Plaintiff alleges that due to Defendant's conduct, he has "lost multiple jobs and needed to change his telephone number over 100 times in the past seven years." *Id.* ¶ 16. Plaintiff's two-count Complaint alleges that Defendant violated 15 U.S.C. § 6851 by disclosing intimate images of Plaintiff "through text messages using her cell phone/computer" to Plaintiff's family members and online without obtaining Plaintiff's consent. *Id.* ¶¶ 38-41. Plaintiff also alleges Defendant violated N.J.S.A. 2A:58D-1 in distributing images and videos of Plaintiff performing a sexual act and showing Plaintiff's intimate body parts. *Id.* ¶¶ 46-47. Plaintiff seeks an award of damages, including "not less than $150,000.00 per . . . intimate image and video shared, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for [his] emotional distress . . . [a]n injunction and order permanently restraining Defendant from disseminating Plaintiff's intimate images and videos without [his] permission or consent[,]" punitive damages, prejudgment interest on all amounts due, an award of costs Plaintiff has incurred in the instant action, and any additional relief as determined by this Court. *Id.* at 9.

On November 15, 2023, Defendant was served a summons in the instant action. (ECF No. 13) Defendant failed to appear, answer, move, or otherwise respond to Plaintiff's Complaint, precipitating Plaintiff's filing of a request with the Clerk of the Court to enter default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 14) On December 15, 2023, the Clerk entered default against Defendant. *Id.* Thereafter, Plaintiff filed the instant Motion for entry of default judgment against Defendant. (ECF No. 15) As Defendant has not filed a

response, the Court deems Plaintiff's Motion unopposed. Accordingly, this matter is now ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 authorizes the entry of default judgment against a party that has failed to file a timely responsive pleading. Fed. R. Civ. P. 55(b)(2); *see also Dellecese v. Assigned Credit Sols., Inc.*, No. 15-6678, 2017 WL 957848, at *1 (D.N.J. Mar. 10, 2017). Rule 55 establishes a two-step process for obtaining a default judgment: (1) the party seeking default must obtain an entry of default by the Clerk of the Court; and (2) once the Clerk of the Court has entered the default, the party can seek a default judgment. It is within the discretion of the district court whether to grant a motion for default judgment. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (explaining the entry of default judgment is left primarily to the discretion of the district court). "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp., et al.*, No. 20-9537, 2021 WL 1541054, at *3 (D.N.J. Apr. 20, 2021) (quoting *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011)). With regard to damages, the Court may order or permit the plaintiff to provide additional evidence to support their allegations. *Mancuso v. Tyler Dane, LLC*, No. 08-5311, 2012 WL 1536210, at *2 (D.N.J. May 1, 2012).

The moving party is not entitled to default judgment as a right; rather, the Court may enter a default judgment "'only if the plaintiff's factual allegations establish the right to the requested relief.'" *Dellecese*, 2017 WL 957848, at *2 (quoting *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012)); *see also United States v.*

4

*$55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984) (stating that "this court does not favor entry of defaults and default judgments" and noting the court's preference that cases be decided on the merits).

Accordingly, before granting default judgment, a court must determine: (1) whether it has jurisdiction both over the subject matter and parties; (2) whether the defendant has been properly served; (3) whether the complaint sufficiently pleads a cause of action; and (4) whether the plaintiff has proved damages. *See Tri-Union Seafoods, LLC*, 2021 WL 1541054, at *3. With respect to damages, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." *Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-02782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009); *see also Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009) ("In determining the amount, the district court may conduct a hearing."). Further, the Court must consider the additional following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Tri-Union Seafoods, LLC*, 2021 WL 1541054, at *3 (quoting *Chamberlain*, 210 F.3d at 164).

### III. DISCUSSION

As stated previously, obtaining a default judgment pursuant to Fed. R. Civ. P. 55 is a two-step process: first the Clerk of the Court must enter a defendant's default after the properly served defendant failed to plead or otherwise defend itself. Once the entry has been made by the Clerk, a plaintiff can request that the Clerk enter default judgment when a plaintiff's claim is for a sum certain, but in all other cases, such as the instant case, a plaintiff must apply to the court for a default judgment pursuant to Fed. R. Civ. P. 55(b)(2).

Here, the Clerk of the Court entered a default on December 15, 2023, against Defendant for failing to plead or otherwise defend itself following the summons which was returned as executed on November 15, 2023. (ECF No. 14) Since then, the docket reflects that Defendant has not made an appearance or responded to this case in any manner. Thus, the first step is satisfied, and the Court will proceed to determine whether the entry of a default judgment is proper in this case.

### a. Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *Tri-Union Seafoods, LLC*, 2021 WL 1541054, at *3 (quoting *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, *2 (D.N.J. Jan. 22, 2015)). Thus, the Court must first determine subject matter jurisdiction as well as personal jurisdiction over Defendant before it can proceed to any other aspect of the default judgment motion.

Here, the Court has federal question jurisdiction because Plaintiff's claim raises a federal question: whether Plaintiff is entitled to damages based on claims pursuant to 15 U.S.C. § 6851.[1] The Court also exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claim under N.J.S.A. 2A:58D-1. The state-law claim and the Section 6851 claim arise from a common nucleus of operative facts as both claims allege Defendant disseminated intimate images of Plaintiff to Plaintiff's family members and friends using a cell phone or computer and

---

[1] Plaintiff also alleges diversity jurisdiction pursuant to 28 U.S.C. § 1331, stating the amount in controversy exceeds the sum or value of $75,000, and the dispute is between citizens of different states. *See* Compl. ¶ 10. However, Plaintiff improperly alleges his and Defendant's citizenship, stating he is a "resident" of New Jersey and Defendant is a "resident" of Oregon, rather than stating they are "citizens" of those respective states. *See* 28 U.S.C. 1332(a)(1); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 219 n.4 (3d Cir. 2012) (citing *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ("[M]ere residency in a state is insufficient for purposes of diversity [of citizenship].")). Accordingly, because Plaintiff has improperly alleged citizenship, thus impacting the Court's ability to exercise diversity jurisdiction, the Court exercises jurisdiction in the instant action based on the federal question presented.

that Defendant published at least one intimate image on the Internet. *See* 28 U.S.C. 1367(a) ("district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *see also De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003) (explaining "a district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact[s]' with the claims that supported the district court's original jurisdiction" (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

Personal jurisdiction "depends upon 'the relationship among the defendant, the forum, and the litigation[,]'" *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)), and may be established through general jurisdiction or specific jurisdiction. *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction"). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, the Court does not have general jurisdiction over Defendant, who Plaintiff alleges is a "resident" of Oregon. Compl. ¶ 7. Accordingly, the Court must consider whether it can exercise specific jurisdiction.

Specific jurisdiction may be established over a defendant where the defendant "has 'purposefully directed' his [or her] activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (internal citations omitted). While physical presence within the forum is not required, a "plaintiff must show that the defendant has purposefully directed its activities toward the residents of the forum state or otherwise 'purposefully avail[ed] itself of

7

the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *IMO Indus., Inc.*, 155 F.3d at 259 (alteration in original) (internal citation omitted) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Specific jurisdiction requires that: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair." *WAG Acquisition, LLC v. Multi-Media, LLC*, No. 14-1661, 2015 WL 5310203, at *12 (D.N.J. Sept. 10, 2015). Additionally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Importantly, "the defendant's conduct and connection with the forum [must be] such that he [or she] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "Once specific jurisdiction is established, a defendant can be sued in the jurisdiction only in the matter from which the jurisdiction arises." *Boswell v. Cable Servs. Co.*, No. 16-4498, 2017 WL 2815077, at *3 (D.N.J. June 29, 2017).

Here, personal jurisdiction is based upon Defendant's specific contacts with New Jersey as they relate to the claims in the instant action. Plaintiff asserts that jurisdiction in this District "is appropriate because of Defendant's contacts with New Jersey, specifically because she persistently directed her activities at New Jersey residents, including Plaintiff, his employers, his family, and his girlfriend." Plaintiff's Brief ("Pl.'s Br.") at 6. Because Plaintiff's claims arise out of Defendant's activities, this Court's exercise of specific jurisdiction over Defendant is reasonable and fair.

### b. Proper Service

Next, as to serving Defendant, the Court looks to the service requirements under Federal Rule of Civil Procedure 4(e), which establishes the methods for effecting service upon individual defendants. Under Rule 4(e), individuals may be served "(1) personally, (2) by leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with someone of suitable age who resides there, (3) by delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process, or (4) following the state law where the Court is located or where service is made for serving a summons." *Fanor v. Univ. Hosp.*, No. 16-320, 2016 WL 4728104, at *2 (D.N.J. Sept. 9, 2016). Here, Plaintiff filed his executed summons on November 15, 2023, and the summons indicates that Defendant was served personally on November 15, 2023. (ECF No. 13) The summons was served by a sheriff who declared that the information contained in the "Return of Service" and "Statement of Service Fees" was true and correct under penalty of perjury. *Id.* The Court is satisfied that Defendant was properly served.

### c. Sufficiency of Causes of Action

Next, the Court must consider whether the undisputed facts provided in Plaintiff's Complaint allege legitimate claims. *IBEW Loc. 351 Pension Fund v. George Sparks, Inc.*, No. 14-2149, 2015 WL 778795, at *1 (D.N.J. Feb. 24, 2015) ("The plaintiff's unchallenged facts set forth in the complaint must establish a legitimate cause of action before default judgment can be entered."); *see also Mancuso*, 2012 WL 1536210, at *2. Here, Plaintiff alleges violations under 15 U.S.C. § 6851 and N.J.S.A. 2A:58D-1.

### 1. **Violation of 15 U.S.C. § 6851**

As part of the Violence Against Women Act Reauthorization of 2022, Congress provided a civil action for the disclosure of persons' "intimate visual depictions" without their consent under 15 U.S.C. § 6851. The statute provides, in pertinent part:

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief as set forth in paragraph (3).

15 U.S.C. § 6851(b)(1)(A).

Under the Civil Action Relating to Disclosure of Intimate Images ("CARDII"), an "intimate visual depiction" is any photo, video, or other visual image, *see* 18 U.S.C. 2256(5), that depicts, in relevant part, (1) the uncovered genitals or pubic area or (2) the display or transfer of bodily sexual fluids, including an identifiable individual engaging in "sexually explicit conduct." 15 U.S.C. § 6851(a)(5). "Sexually explicit conduct" includes "sexual intercourse," "graphic or lascivious simulated [ ] masturbation," or "graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)-(B). Plaintiff has alleged that Defendant disseminated several images and videos of Plaintiff to family members and posted images online. Those images and videos meet the definition of intimate visual depictions under the statute as Plaintiff is identifiable in the images, which depict his uncovered pubic area, and the videos are of Plaintiff masturbating. Accordingly, the Court finds Plaintiff has sufficiently set forth that the photographs and videos of him are intimate visual depictions as defined by CARDII.

Next, under CARDII, "disclose" means "to transfer, publish, distribute, or make accessible." 15 U.S.C. § 6851(a)(4). To satisfy CARDII, the disclosure must be "in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce."

10

15 U.S.C. § 6851(b)(1)(A). The Complaint alleges that Defendant sent images to Plaintiff's family members, his girlfriend, and his girlfriend's family members through text messages using her cell phone. As cell phones are instrumentalities of interstate commerce, the transfer of Plaintiff's intimate visual depictions through text messages from Defendant's cell phone to the individuals identified above falls within the scope of interstate commerce. *See, e.g., United States v. Morgan*, 748 F.3d 1024, 1033 n.11 (10th Cir. 2014); *United States v. Giordano*, 442 F.3d 30, 40 (2d Cir. 2006); *United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir. 1997). The Complaint further alleges that Defendant posted an image of Plaintiff online, which constitutes transportation in interstate commerce. *See United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002) (holding that "[t]ransmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce" (alteration in original) (quoting *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997)); *see also United States v. MacEwan*, 445 F.3d 237, 244 (3d Cir. 2006) (acknowledging same). Accordingly, the Court finds Plaintiff sufficiently sets forth that the intimate visual depictions were disclosed "in" or "using . . . interstate or foreign commerce." 15 U.S.C. § 6851(b)(1)(A).

As to nonconsensual disclosure, Plaintiff alleges that Defendant disclosed the intimate visual depictions of Plaintiff "without [Plaintiff's] consent." Compl. ¶ 4. Plaintiff also certifies that he "never gave [Plaintiff his] permission to reshare [the images and videos] with any third party." Declaration of S.S. ("S.S. Decl.") ¶ 6. Accordingly, the Court finds that Plaintiff sufficiently sets forth that Defendant knew Plaintiff did not consent to his intimate visual depictions being shared with his family, his girlfriend, and his girlfriend's family members nor did Plaintiff consent to any image being posted on the Internet.

Finally, as to disclosure by Defendant, the Court finds Plaintiff has sufficiently set forth that Defendant was the person who possessed and distributed the intimate videos and images of Plaintiff. Plaintiff certifies that Defendant "is the only person [he] shared these images with" and Defendant "admitted to [him] that she was behind the campaign of harassment." S.S. Decl. ¶¶ 5, 6.

Accordingly, the Court is satisfied that the Complaint, together with Plaintiff's Motion, sufficiently set forth a cause of action for a civil action pursuant to 15 U.S.C. § 6851 and finds that Plaintiff's allegations are pled with the requisite particularity.

### 2. Violation of N.J.S.A. 2A:58D-1

N.J.S.A. 2A:58D-1 provides, in pertinent part:

> a. An actor who . . . photographs, films, videotapes, records, or otherwise reproduces in any manner, the image of another person who is engaged in an act of sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court.
>
> b. An actor who . . . discloses any photograph, film, videotape, recording or any other reproduction of the image of another person who is engaged in an act of sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court. For purposes of this section: (1) "disclose" means . . . transfer, publish, distribute, circulate, disseminate . . . share, or make available via the Internet . . . and (2) "intimate parts" has the meaning ascribed to it in N.J.S.[A.] 2C:14-1.[2]

*Id.* Plaintiff's Complaint articulates the requisite elements of the cause of action created by N.J.S.A. 2A:58D-1 by alleging that the images and videos depict him with his genital area exposed or engaging in a sexual act. Plaintiff also alleges that Defendant published at least one image of Plaintiff on Craigslist and disseminated images and videos to his family members, his girlfriend,

---

[2] Under N.J.S.A. 2C:14-1, "intimate parts" refers to "sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person."

12

and his girlfriend's family. The Court is satisfied that the Complaint, together with Plaintiff's Motion, sufficiently set forth a cause of action for a civil action pursuant to N.J.S.A. 2A:58D-1 and finds that Plaintiff's allegations are pled with the requisite particularity.

### d. Proper Entry of Default Judgment

Finally, the Court must consider whether the entry of default judgment is proper in the context of the instant case. In making this determination, the Court must consider several additional factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 686 (D.N.J. 2015).

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869-70 (3d Cir. 1984). However, Defendant did not respond to this case, and such a failure prevents the Court from being able to ascertain any litigable defenses. *United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016) (citing *Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009)). Therefore, no meritorious defense presently exists with respect to deciding the instant Motion.

Next, a plaintiff will suffer prejudice by a defendant's failure to respond, "because it has been 'prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion.'" *Innovative Sports Mgmt., Inc. v. Tumi Int'l, Inc.*, No. 20-14253, 2021 WL 4026112, at *3 (D.N.J. Sept. 2, 2021) (alteration in original) (quoting *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *4). Additionally, without the remedy of default judgment, a plaintiff facing a defendant that refuses to engage will be prejudiced because it has "no other means of seeking

damages for the statutory harms caused by Defendant[.]" *Dellecese*, 2017 WL 957848, at *3. Here, Defendant was properly served and has not appeared. Without entry of default judgment, Plaintiff would have no other means of redress.

Similarly, Defendant's complete failure to answer or respond in this case "evinces the Defendant's culpability[.]" *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *4; *Interstate Realty Mgmt. Co. v. PF Holdings, LLC*, No. 16-4095, 2017 WL 53707, at *3 (D.N.J. Jan. 4, 2017) (finding that a defendant "may be presumed culpable for their inaction"). There is nothing in the record to show that Defendant's failure to respond was not willfully negligent, and therefore the Court is satisfied that such inaction supports a finding that Defendant is culpable. *Prudential Ins. Co. of Am.*, 2009 WL 536403, at *1.

As a result, the Court is satisfied that all factors support the entry of a default judgment and will grant Plaintiff's Motion.

### e. Permanent Injunction

Additionally, Plaintiff requests the issuance of a permanent injunction against Defendant to restrain Defendant from disseminating Plaintiff's intimate images and videos without his consent. CARDII permits courts to grant injunctive relief to prevent the display or disclosure of an "intimate visual depiction." *See* 15 U.S.C. § 6851(b)(3)(A)(ii). A court may issue a permanent injunction in the context of a default judgment if a plaintiff establishes the following:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

### i. Irreparable Injury and Remedies Available for the Injury

For an injury to be irreparable, it must be a type of injury that cannot be adequately assuaged by money damages. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988).

Here, Plaintiff has demonstrated the imminent risk of Defendant's further nonconsensual disclosure of intimate visual depictions of Plaintiff. In his Complaint, Plaintiff alleges that, beginning in 2016, following the conclusion of the dating relationship, Defendant "continuously call[ed] Plaintiff's place of work, emailing and contacting his current girlfriend on her cell phone and place . . . of business, and texting his family members from anonymous numbers." Compl. ¶¶ 14-15. Plaintiff further alleges that Defendant escalated her conduct nearly six years later in 2022 by disseminating the intimate videos and images of him and publishing at least one of the images on the Internet. *Id.* ¶¶ 18-20. Plaintiff filed several police reports against Defendant, but Defendant's conduct "continued even after being made aware of her illegal conduct." *Id.* ¶ 3. Plaintiff states he has "lost multiple jobs and needed to change his telephone number over 100 times in the past seven years." *Id.* ¶ 16. In 2023, Plaintiff filed a domestic violence action against Defendant in state court and was issued a final restraining order prohibiting Defendant from communicating with, harassing, threatening, and stalking Plaintiff, his mother, sister, and girlfriend. *Id.* ¶ 20. Defendant's conduct, first in attempting to contact Defendant's girlfriend and family members through phone and email and then, years later, disseminating the intimate videos and images of Plaintiff without his consent demonstrates Defendant's continued attempt to engage with Plaintiff, his family, his girlfriend, and her family. Defendant's conduct demonstrates to this Court that Defendant poses an imminent risk of continued dissemination of Plaintiff's intimate

15

images and videos. Thus, the Court finds the Complaint sufficiently articulates an irreparable injury.

### ii.     Equity is Warranted

The Court must balance the harm that will occur to the moving party from the denial of an injunction with the harm that the non-moving party will incur if the injunction is granted. *See TD Bank N.A. v. Hill*, 928 F.3d 259, 283-84 (3d Cir. 2019). The balance of harms among the Parties weighs in favor of Plaintiff and against Defendant. "The impact of revenge porn can include public shame and humiliation, an inability to find new romantic partners, mental health effects such as depression and anxiety, job loss or problems securing new employment, and offline harassment and stalking. Furthermore, once disseminated, it is challenging to completely remove these images from the internet." *Doe v. Constant*, No. 24-554, 2024 WL 3512136, at *4 (W.D. La. July 23, 2024). The Court does not see harm to Defendant in granting the injunction request. Rather, any harm caused in denying the request would be to Plaintiff because of Defendant's continued dissemination of Plaintiff's intimate images and videos. Thus, the Court finds that a remedy in equity is warranted given the circumstances of this case.

### iii.     Public Interest Served

The public interest would not be disserved by a permanent injunction. Importantly, CARDII, under which Plaintiff, in part, seeks relief, expressly contemplates the issuance of an injunction: "[T]he court may, in addition to any other relief available at law, order equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction." *See* 15 U.S.C. § 6851(b)(3)(A)(ii). Moreover, "the public has a strong interest in preventing the nonconsensual dissemination of another's intimate visual images, more commonly known as 'revenge porn,' as

evidenced by Congress's careful and explicit creation of this statutory cause of action to protect persons from this insidious form of harassment." *Doe*, 2024 WL 3512136, at *4. Therefore, the Court finds that the public interest would be served with the issuance of a permanent injunction against Defendant for the dissemination of intimate images and videos of Plaintiff.

Given the foregoing, the Court finds that granting Plaintiff's request for a permanent injunction is warranted.

### f. Damages

While the Court must accept well-pleaded factual allegations as true when considering the entry of a default judgment, that is not the case for a plaintiff's factual allegations regarding damages. *Mancuso*, 2012 WL 1536210, at *2. To ascertain the appropriate amount of damages, courts may permit or order the submission of additional evidence to support the allegations of damages or conduct hearings. *IBEW Loc. 351 Pension Fund*, 2015 WL 778795, at *2; Fed. R. Civ. P. 55(b)(2).

In this matter, the Court will defer judgment on damages and will schedule a hearing to address the specific relief Plaintiff seeks under 15 U.S.C. § 6851 and N.J.S.A. 2A:58D-1.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment (ECF No. 15) is **GRANTED**.

An order consistent with this Opinion will be entered.

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE