*Prepared by the Court*

| | |
|---|---|
| J.M.,<br><br>          Plaintiff,<br><br>vs.<br><br><br>VICTOR ROZANOV,<br><br>          Defendant. | SUPERIOR COURT OF NEW JERSEY<br><br>LAW DIVISION – ESSEX COUNTY<br><br><br>Docket No. ESX-L-008892-17<br><br><br>**ORDER** |

This matter having been opened to the court by Plaintiff, J.M., by way of a proof hearing which was conducted before the Honorable Annette Scoca on February 24, 2022 with plaintiff and counsel appearing, and defendant in default status, appearing but no participating, and the court having conducted the proof hearing and considered pre and post hearing submissions, for good cause shown, and for the reasons stated in the Opinion of this Court dated January 25, 2023, it is hereby **ORDERED** as follows:

Plaintiff is awarded the sum of $483,680.00 in compensatory damages for past and future medical expenses. The damages shall be reduced by any applicable copayments and/or deductible sums.

Plaintiff is awarded the sum of $100,000.00 in punitive damages pursuant to N.J.S.A. 2A:15-5.12(h).

Plaintiff is awarded the sum of $38,991.24 for attorneys' fees and costs.

The total amount of the judgment against Defendant Victor Rozanov is $622,671.24.

A copy of this Order shall be served upon all counsel and/or parties of record in accordance with the Rules of Court within 7 days from this date.

/s/Annette Scoca, J.S.C.
HON. ANNETTE SCOCA, J.S.C.

**NOT FOR PUBLICATION WITHOUT**

**THE APPROVAL OF THE COMMITTEE ON OPINIONS**

Honorable Annette Scoca, J.S.C.

Superior Court of New Jersey, Law Division

470 Dr. Martin Luther King, Jr., Blvd.

Chambers 212

Newark, NJ 07102

| | |
|---|---|
| J.M., | SUPERIOR COURT OF NEW JERSEY |
|      Plaintiff, | LAW DIVISION – ESSEX COUNTY |
| vs. | |
| | Docket No. ESX-L-008892-17 |
| VICTOR ROZANOV, | **DECISION** |
|      Defendant. | |

**PROCEDURAL HISTORY**

On December 18, 2017, Plaintiff J.M. (hereafter "Plaintiff") filed a Complaint against

Defendant Victor Rozanov (hereafter "Defendant") alleging violations of N.J.S.A. 2A:58D-1,

Intentional Infliction of Emotional Distress, and Invasion of Privacy Intrusion Upon Seclusion.

On June 11, 2018, Defendant was personally served with a copy of the Summons and

Complaint. Defendant's time to answer, move or otherwise respond originally expired on July

16, 2018.  The parties agreed to extend the time to answer, move, or otherwise respond until

September 14, 2018, to the extent of the sixty-day period provided for in Rule 4:6-2(c), without

leave of the Court.  The parties continued to discuss the potential for settlement and desired an

1

additional sixty days to complete their settlement negotiations before requiring Defendant to respond to the Complaint.  On September 14, 2018, the Honorable Bahir Kamil granted the parties' Order Extending Time to Answer, Move, or Otherwise Respond until November 13, 2018.  On January 19, 2019, a Lack of Prosecution Dismissal Order was issued dismissing the matter without prejudice pursuant to Rule 1:13-7 or Rule 4:43-2.  On or about January 29, 2019, all settlement talks between the parties ceased.

On February 13, 2019, Plaintiff filed a Motion to Vacate Dismissal and Enter Default Judgment against Defendant, which Judge Kamil granted on April 2, 2019.  On May 30, 2019, Plaintiff participated in a Proof Hearing before Judge Kamil.  Following the May 30, 2019, Proof Hearing, Judge Kamil retired and the matter was reassigned to the Honorable Annette Scoca in May 2021.  On December 2, 2021, the Court received additional briefing on behalf of the Plaintiff requesting judgment in the amount of $3,785,000 against Defendant, consisting of $750,000 in Compensatory Damages; $3,000,000 in Punitive Damages; and $32,895 in Attorney Fees, plus $461.24 in Costs and Expenses.

On February 24, 2022, the Plaintiff participated in an additional Proof Hearing before Judge Scoca as no decision had been rendered by Judge Kamil prior to his retirement.  Defendant appeared at the February 24, 2022, Proof Hearing but was unable to participate due to his default status.  The Court asked Defendant if he intended to retain counsel or if he intended to file an answer in the matter.  Defendant responded no to the Court.  Defendant has not filed a Motion to Vacate the Default and remains unrepresented by legal counsel.

# FINDINGS OF FACT

The Plaintiff testified at the proof hearing. The Court found that the Plaintiff's testimony was compelling, truthful and extremely emotional. During portions of her testimony the Plaintiff cried, she was quivering and her voice sounded shaky. The Court had to pause briefly at one time during the testimony in order for the Plaintiff to compose herself. It was quite apparent to the Court that the Defendant's conduct had an extreme, negative effect upon the Plaintiff. Moreover, the Plaintiff's testimony was consistent with the other evidence produced at the hearing such as the treatment billing records, the letter from Seton Hall University, and the testimony offered by Howard Brenner, LCSW. Based on Plaintiff's demeanor, emotional responses, and consistency during the February 24, 2022 Proof Hearing, the Court finds Plaintiff to be a credible witness and Plaintiff's testimony to be credible evidence. The Court accepts Plaintiff's testimony as true.

Plaintiff and Defendant met while they were both freshman at Seton Hall University. Proof Hr'g, Scoca 9:13-16. Plaintiff and Defendant engaged in a romantic relationship that lasted roughly a year. Proof Hr'g, Scoca 9:3-5. Plaintiff estimates that the relationship began in the Fall of 2015 and ended in the Spring of 2017. Proof Hr'g, Scoca 9:6-10:6. Plaintiff initiated the breakup. Proof Hr'g, Scoca 10:8-9. During their relationship, Defendant took several intimate videos of Plaintiff engaging in sexual activities. Proof Hr'g, Scoca 10:10-14. Based on Defendant's comments following the sexual acts, Plaintiff was under the impression that the videos were deleted soon after they were recorded. Proof Hr'g, Scoca 10:13-18.

On May 27, 2017, Defendant uploaded a one minute and fifteen second video of Plaintiff preforming fellatio on Defendant to www.Pornhub.com ("Pornhub") without Plaintiff's permission or consent. Proof Hr'g, Scoca 19:5-7. The video was embedded with a clear

3

photograph of Plaintiff's face and contained Plaintiff's full name within the caption "_____

_____ loves sucking cock." Proof Hr'g, Scoca 11:8-9. The video was then disseminated to

another website titled www.CamWhores.tv. Proof Hr'g, Scoca 75:7-10. The video remained

online for nearly three months, until police intervention resulted in its removal. Proof Hr'g,

Scoca 20:2-4. Prior to its removal, the video received over 2,800 views on www.CamWhores.tv

alone. Proof Hr'g, Scoca 75:7-10. The video has since appeared on other pornographic websites,

including, but not limited to, www.CameBabe.me. Proof Hr'g, Scoca 11:8-9. The video was

viewed on www.CamBabe.me an additional 1,923 times prior to its removal. Proof Hr'g, Scoca

P-2.

Plaintiff initially learned of the video when she began to receive sexually explicit and

harassing messages from strangers who had viewed the video. Proof Hr'g, Scoca 10:22-11:4.

These strangers were able to locate Plaintiff on social media by searching for her full name.

Proof Hr'g, Scoca 11:5-17. Motivated by concerns for her privacy, Plaintiff removed her full

name from her various social media accounts and increased her privacy settings. Proof Hr'g,

Scoca 14:2-7. Plaintiff additionally deactivated her Facebook account as a result of this matter.

Proof Hr'g, Scoca 14:11.

After Plaintiff saw the video, she reached out to Defendant to ask if he had shared the

video with anyone. Proof Hr'g, Scoca 14:16-19. Defendant initially denied sharing the video.

Proof Hr'g, Scoca 14:18-19. Plaintiff accused Defendant of lying and sent him a screenshot of

the video from an online posting. After this encounter, Defendant stopped responding to

Plaintiff. Proof Hr'g, Scoca 14:20-22. Plaintiff also reached out to Defendant's father about the

matter. Proof Hr'g, Scoca 14:22-24. Defendant's father initially responded, but then advised

Plaintiff to cease contact with his family and to speak directly with their attorney. Proof Hr'g, Scoca 15:1-4.

Plaintiff first contacted the pornographic websites directly and reported the video through their platforms in attempt to have the video removed. When these attempts were unsuccessful, Plaintiff reached out to Defendant and Defendant's father to ask them to remove the video. Proof Hr'g, Scoca 20:7-12. When these attempts were also unsuccessful, Plaintiff submitted a police report and filed criminal charges against Defendant. Proof Hr'g, Scoca 20:18-23. The video was eventually removed as a result of police intervention. Proof Hr'g, Scoca 20:2-4.

Plaintiff reported the matter to Seton Hall University in the Fall of 2017. Proof Hr'g, Scoca 21:3-10. During an administrative hearing conducted shortly thereafter, Defendant admitted to uploading the video online without Plaintiff's consent. Plaintiff testified that, during the same administrative hearing, Defendant admitted to uploading the video online to harm her. Proof Hr'g, Scoca 21:13-16. The administrative hearing also revealed that Defendant originally uploaded the video to www.PornHub.com, from which it was subsequently disseminated to the other pornographic websites discussed above. Proof Hr'g, Scoca 15:10-13. Defendant was expelled from Seton Hall University following the administrative hearing. Proof Hr'g, Scoca 21:8-10.

When Plaintiff first learned about the video, she did not want to leave her house. Plaintiff was terrified that, while out in public, someone who had seen the video might recognize her. Proof Hr'g, Scoca 21:20-25. Plaintiff was too embarrassed to see her friends and was fearful that she might lose her internship. Proof Hr'g, Scoca 21:25-22:1. Plaintiff began to struggle academically following the upload of the video. Proof Hr'g, Scoca 22:14-17. Plaintiff received academic accommodations from Seton Hall University and began to attend regular counseling

and psychological sessions provided by the school. Proof Hr'g, Scoca 22:21-23:4. Plaintiff was ultimately able to graduate from Seton Hall University. Proof Hr'g, Scoca 53:4-7.

However, while at Seton Hall University, Plaintiff experienced social repercussions due to Defendant's actions following his expulsion. Proof Hr'g, Scoca 23:15-25. After Defendant's expulsion, his friends began to inquire about why he was no longer enrolled in classes. Instead of telling his friends the true nature of his expulsion, Defendant told his peers that Plaintiff had falsely accused him of rape. Proof Hr'g, Scoca 23:17-22. This caused Plaintiff to experience additional social stigma as many of her peers believed that she had falsely accused Defendant of rape and prompted his "unjust" expulsion from Seton Hall University. Proof Hr'g, Scoca 23:24-25.

According to the Plaintiff's testimony and the billing records of Howard Brenner in evidence, Plaintiff is currently undergoing treatment to manage the symptoms of her anxiety and panic disorder, which stem from and have been exacerbated by the incident precipitating this lawsuit. Plaintiff started seeing Howard Brenner, a Licensed Clinical Social Worker, after the incident and meets with Howard Brenner once a week for approximately one 45-minute appointment per week.

Howard Brenner testified about the Plaintiff's emotional condition during the sessions which addressed her experiences as a victim of what he termed 'revenge porn.' He further testified that Plaintiff's experience with Defendant has caused her to develop trust issues, from which she will continue to suffer. In addition, Howard Brenner notes that Plaintiff is concerned that the video will eventually resurface online and cause her to lose her job. Plaintiff has not told her parents about the video's existence and remains fearful that they might find out about it. Howard Brenner testified as to the Plaintiff's panic attacks. It is Howard Brenner's opinion that

Plaintiff was clearly damaged by the events of this matter and will continue to require ongoing medical treatment to manage her mental health.

Plaintiff has attended over 67 appointments Howard Brenner, at the cost of $180 a session, and has accrued over $10,620 in treatment expenses. Proof Hr'g, Scoca P-4.  Plaintiff additionally treats with Dr. Nicholas Wisnoski, a licensed psychiatrist, monthly and is taking medicine to assist her in managing her anxiety and panic disorder. Brenner Cert. ¶ 13-14. Plaintiff has attended over 16 appointments with Dr. Wisnoski, at the cost of $425 per in person session and $325 per telepsychiatry session, and has accrued over $5,300 in treatment expenses. Proof Hr'g, Scoca P-4.  Plaintiff plans to continue with her current course of psychological treatment for the foreseeable future. Proof Hr'g, Scoca 55:18-23.

## ANALYSIS

### A.  Jurisdiction and Venue

This Court has jurisdiction to hear this case and venue is properly based in New Jersey.  At the filing of the Complaint, Plaintiff resided in the State of New Jersey. At the filing of the Complaint, Defendant resided in the State of New York, but was a resident of the State of New Jersey when the alleged conduct at issue occurred.  The relevant incident occurred while the Plaintiff and Defendant were students at Seton Hall University in Essex County, New Jersey.

### B.  Findings of Law

#### Violation of N.J.S.A. 2A:58D-1

In her First Cause of Action, Plaintiff alleges that Defendant violated New Jersey Statute 2A:58D-1. New Jersey Statute 2A:58D-1 states:

b. An actor who, in violation of section 1 of P.L.2003, c.206 (C.2C:14-9), discloses any photograph, film, videotape, recording or any other reproduction of the image of another person who is engaged in an act of sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court. For purposes of this section: (1) "disclose" means sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, publish, distribute, circulate, disseminate, present, exhibit, advertise, offer, share, or make available via the Internet or by any other means, whether for pecuniary gain or not; and (2) "intimate parts" has the meaning ascribed to it in N.J.S.2C:14-1.

c. The court may award:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

(4) such other preliminary and equitable relief as the court determines to be appropriate.

Plaintiff alleges that Defendant violated New Jersey Statute 2A:58D-1 by recording Plaintiff while she was performing a sexual act and then subsequently distributing the videotape on a publicly accessible pornographic website. Plaintiff has met her burden on this claim.

On May 27, 2017, Defendant uploaded a videotaped recording of Plaintiff engaging in the sexual act of fellatio to Pornhub. The video was uploaded without Plaintiff's consent. Pornhub is a publicly accessible pornographic website, and the video was viewed over 4,000 times within its first day online.

Defendant violated N.J.S.A. 2A:58D-1 and is therefore liable to Plaintiff for actual damages, punitive damages, and other preliminary and equitable relief the Court deems appropriate. Judgment is entered in favor of Plaintiff on this Count.

8

## Intentional Infliction of Emotional Distress

Plaintiff's Second Cause of Action is for a claim of intentional infliction of emotional distress.

To establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and severe emotional distress. Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (1988).

First, the plaintiff must prove that "the defendant acted intentionally or recklessly." Id. For a claim of intentional infliction of emotional distress to result in liability, the defendant must "intend both to do the act and to produce emotional distress." Id. Second, the plaintiff must prove that the defendant's conduct was extreme and outrageous. Id. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement, supra, § 46 comment d. Third, the plaintiff must demonstrate that the defendant's actions were the proximate cause of the plaintiff's emotional distress. 111 N.J. at 366. Fourth and finally, "the emotional distress suffered by the plaintiff must be 'so severe that no reasonable man could be expected to endure it.'" Id. The defendant's conduct must be severe enough to cause "substantial emotional distress or mental harm to [the] average person." Taylor v. Metzger, 152 N.J. 490, 516.

Plaintiff alleges that Defendant intentionally uploaded the relevant video of Plaintiff online to do damage to her reputation and to cause her severe emotional harm. That Defendant's conduct was so outrageous in character and so extreme in degree, that it went beyond all bounds of decency. That Defendant engaged in such conduct in attempt to inflict emotional distress on

9

Plaintiff as a vendetta for a perceived wrong she had committed against him.  That as a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress.  The Court finds that Plaintiff has proven each element of intentional infliction of emotional distress and is owed judgment on this Count.

Defendant's actions were both intentional and performed with the intention to inflict emotional distress on Plaintiff.  Defendant intentionally uploaded the explicit recording of Plaintiff to a publicly accessible pornographic website without her consent.  Defendant's intent to inflict emotional distress is further demonstrated by the additional steps Defendant underwent to connect Plaintiff's identity to the video.  Defendant embedded a clear photograph of Plaintiff's face and her full name into the video, so that Plaintiff would be easily identifiable.  Further, at a subsequent administrative hearing conducted by Seton Hall University, Defendant admitted to uploading the video to harm the Plaintiff.

Defendant's conduct was extreme and outrageous.  Courts in other jurisdictions have held that publishing the explicit content of another without their consent, in an attempt to cause harm, is beyond the limits of decency and is not tolerable in a civilized society.  See In re Thomas, 254 B.R. 879, 885 (1999).[1]

The record demonstrates that Defendant's actions were the proximate cause of Plaintiff's emotional distress, as testimony from Howard Brenner, Plaintiff's treating social worker, illustrates that Plaintiff's anxiety and panic disorder stem from the incident precipitating this lawsuit.  Finally, Defendant's conduct was severe enough to cause substantial emotional

---

[1] The Court acknowledges that Unpublished Opinions as well as opinions from other jurisdictions are not binding authority.

distress to the average person as no reasonable person could un-frettingly endure the unauthorized disclosure of their explicit content and the resulting social stigmas. Id.

Defendant intentionally inflicted emotional distress upon Plaintiff. Judgment is entered in favor of Plaintiff on this Count.

### Invasion of Privacy by Unreasonable Intrusion

Plaintiff's Third Cause of Action is for a claim of invasion of privacy by unreasonable intrusion. Plaintiff alleges that Defendant unreasonably intruded on Plaintiff's physical solitude and seclusion.

According to New Jersey law, invasion of privacy is not a single tort but rather a category that encompasses four distinct areas of invasions according to four distinct interests of the plaintiff. Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982); Restatement, Torts 2d, § 562A at 376 (1977). The four distinct areas of invasion of privacy are: "(a) unreasonable intrusion, (b) appropriation of the other's name or likeness, (c) unreasonable publicity given to one's private life and (d) publicity that normally places the other in a false light before the public." 186 N.J. Super. at 339 (1982); Restatement, Torts 2d, s 562A at 376 (1977).

The tort of invasion of privacy by unreasonable intrusion occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns." Id. A defendant is subject to liability for invasion of privacy by unreasonable intrusion upon the seclusion of another where "the intrusion would be highly offensive to a reasonable person." Id. To recover for an invasion of privacy by unreasonable intrusion on seclusion, the plaintiff must prove by a preponderance of the evidence: "(1) That the defendant

11

intentionally intruded or pried into the plaintiff's seclusion without permission from the plaintiff; (2) That the intrusion was highly offensive to a reasonable person; (3) That the matter or activities on which the defendant intruded was private; and (4) That the intrusion was the cause of the plaintiff's injuries/damages/losses." N.J. Model Civil Jury Charges § 3.14(2).

Plaintiff alleges that Defendant intruded upon and violated the privacy of Plaintiff, knowingly, recklessly, and with malice aforethought when, without her knowledge and consent, he uploaded a video of her performing fellatio onto a pornographic website along with her name and a clear imagine of her face. That, by distributing the video, Defendant sought to embarrass and humiliate Plaintiff and that such embarrassment and humiliation was reasonably foreseeable. That as a proximate and direct cause of Defendant's actions, which violated Plaintiff's right of privacy, the Plaintiff suffered emotional distress, pain and suffering, and harm to her reputation. Plaintiff has met her burden on this claim.

The Court finds that Defendant has invaded Plaintiff's privacy by unreasonably intruding upon her seclusion. Defendant intentionally intruded into Plaintiff's seclusion, without permission, by deliberately uploading an explicit recording of Plaintiff to a publicly available pornographic website without her consent. Defendant's unauthorized and public dissemination of an explicit video of Plaintiff would be highly offensive to a reasonable person in Plaintiff's position. The material that Defendant intruded upon through his dissemination of the relevant video was private, as it concerned Plaintiff's personal, sexual activities. Finally, as discussed previously, the Defendant's intrusion was the proximate cause of Plaintiff's injuries as certifications from Plaintiff's treating social worker illustrate that Plaintiff's anxiety and panic disorder stem from the Defendant's intrusion upon her privacy. Brenner Testimony.

## C. __Damages Awarded__

### Compensatory Damages

Plaintiff seeks compensatory damages for Defendant's unauthorized dissemination of the relevant video under the theory of both New Jersey Statute 2A:58D-1 and the intentional infliction of emotional distress.

Plaintiff calls to attention that New Jersey Statute 2A:58D-1 explicitly provides that actual damages should not be "less than liquidated damages computed at the rate of $1,000 for each violation of this act." N.J. Stat. § 2A:58D-1.  Plaintiff also emphasizes that New Jersey courts have awarded actual damages in similar cases concerning intentional infliction of emotional distress.  More specifically, Plaintiff references a non-published decision, Del Mastro v. Grimado, 2007 N.J. Super. Unpub. LEXIS 3020.[2]  In Del Mastro v. Grimado, the Superior Court of New Jersey, Appellate Division affirmed a judgment awarding the plaintiff $531,820.47, comprised of $85,000 in compensatory damages, $425,000 in punitive damages, and $21,820.47 in prejudgment interest. Del Mastro v. Grimado, 2007 N.J. Super. Unpub. LEXIS 3020 at *3. The underlying complaint in Del Mastro asserted that, following the termination of a romantic relationship between the plaintiff and defendant, the defendant invaded plaintiff's privacy and subjected her to the intentional infliction of emotional distress by distributing photographs of the plaintiff engaged in sexual acts to her family, friends, neighbors, business clients, and various other individuals via Christmas cards. Id.

Plaintiff asserts that this matter is similar to Del Mastro because "the distribution of the [explicit media] was an intentional act aimed at plaintiff, and [] the perpetrator of [the] act was

---

[2] The Court acknowledges that Unpublished Opinions are not binding authority.

fully cognizant of the devastation and emotional distress that would surely follow." Id. at *3.
Plaintiff argues that Defendant intended to humiliate Plaintiff by uploading the video, embedded
with a clear photograph of Plaintiff's face and full name, to a publicly accessible pornographic
website. Plaintiff calls to attention that when given the opportunity to accept responsibility for
his actions and mitigate the potential damage, Defendant ignored Plaintiff's communications and
left her to navigate the removal process on her own. Plaintiff also highlights that when
Defendant was subsequently expelled from Seton Hall University, he caused further damage by
spreading a harmful rumor that he had been expelled because of a false allegation of rape by
Plaintiff.

Plaintiff points to cases in other jurisdictions where courts have awarded actual damages
based on similar revenge porn claims. In In re Thomas,[3] a South Carolina court awarded
$300,000 in compensatory damages where the defendant, a disgruntled ex-boyfriend, sent sexual
explicitly images of his former girlfriend to her new fiancé. In re Thomas, 254 B.R. 879 (1999).
Plaintiff in that matter experienced "shame, humiliation, worry, sleeplessness, and stress" as a
result. Id. at 885. Plaintiff alleges that she experiences similar emotional responses as the
plaintiff in In re Thomas.

Plaintiff also compares this matter to Taylor v. Franko. Taylor v. Franko,[4] 2009 U.S.
Dist. LEXIS 146650. The defendant in Taylor, like the Defendant in this matter, uploaded
intimate photographs of the plaintiff online, using her full name, without her permission. Id. at 2.

---

[3] The Court acknowledges that Unpublished Opinions, as well as opinions from other jurisdictions, are not binding authority.

[4] The Court acknowledges that Unpublished Opinions, as well as opinions from other jurisdictions are not binding authority.

14

This caused the plaintiff to receive lewd messages concerning the media. Id. at 2. The Taylor court found that the plaintiff was entitled to general damages in the amount of $425,000. Id. The court reasoned that the damages should amount to a sum which "as nearly as possible, will restore [her] to the position [she] would be in if the wrong had not been committed" and includes "'those damages which fairly and adequately compensate [plaintiff] for any past, present, and reasonably probable future disability, pain, and emotional distress caused by the injuries/damages sustained.'" Id. at 4. Again, the Court acknowledges that Taylor is an unpublished case and is not a binding authority.

In determining an appropriate amount to award in compensatory damages, this Court considers the toll that Defendant's actions have taken on the Plaintiff's mental health. Plaintiff was initially afraid to leave her home and struggled to maintain her grades, despite receiving academic accommodations from Seton Hall University. Plaintiff remains fearful of her digital footprint, worries that her parents will one day discover the video, and is afraid that the video will resurface online and cause her to lose her job.

Plaintiff began receiving counseling at Seton Hall University during the two years immediately following the incident and continues to receive treatment to this day. Plaintiff meets with Dr. Nicholas Wisnoski, a Licensed Psychiatrist, once a month and meets with Mr. Brenner, a Licensed Clinical Social Worker, once a week. To date, and as a result of the Defendant's actions, Plaintiff has incurred $5,300 in medical expenses with Dr. Wisnoski. Additionally, to this date, and as a result of the Defendant's actions, Plaintiff has incurred medical expenses of $10,620 with Mr. Brenner. This Court will award Plaintiff $5,300 for her past treatment expenses with Dr. Wisnoski and $10,620 for her past treatment expenses with Mr.

Brenner.[5] The New Jersey Court Rules provide that the Table of Mortality and Life Expectancy "shall be admissible in evidence as prima facie proof of the facts therein contained." N.J. Court Rules, R. 1:13-5. Plaintiff, whose date of birth is July 28, 1997, is currently 24 years old. Based on the Table of Mortality and Life Expectancy, Plaintiff is expected to live for an additional 56.6 years. Plaintiff is expected to continue her current course of treatment with Mr. Brenner and Dr. Wisnoski for the foreseeable future.

According to Howard Brenner, plaintiff's need for weekly treatment will continue possibly for the rest of her life. The certified bills show that Plaintiff is paying $180 a session to treat with Mr. Brenner and $425.00 for each in person session to treat with Dr. Wisnoski. The Court will award the following in future medical treatment:

| Years | Number of Sessions with **Howard Brenner** | Cost per Session | Cost per Year | Total Cost |
|-------|------------------|------------------|---------------|------------|
| 5 | 52 per year | $180 | $9,360 | $46,800 |
| 10 | 26 per year | $180 | $4,680 | $46,800 |
| 41 | 12 per year | $180 | $2,160 | $88,560 |
|  | Sub-Total |  | $16,200 | $182,160 |

| Years | Number of Sessions with **Dr. Wisnoski** | Cost per Session | Cost per Year | Total Cost |
|-------|------------------|------------------|---------------|------------|
| 56 | 12 per year | $425 | $5,100 | $285,600 |

---

[5] Plaintiff testified that both providers are out of network. A yearly $500 deductible is applied to out-of-network providers. The remainder of the bill is paid at 70%. The Court will award the plaintiff past and future medical expenses subject to actual copayment and deductible applications.

**Past Medical Expenses:**

| | | |
|---|---|---|
| Dr. Wisnoski | $ 10,620 | |
| Howard Brenner | $   5,300 | |
| Total Past Medicals | | $ 15,920 |

**Future Medical Expenses:**

| | | |
|---|---|---|
| Dr. Wisnoski | $285,600 | |
| Howard Brenner | $182,160 | |
| Total Future Medicals | | $467,760 |

**Total**                               **$483,680**

Plaintiff also seeks reimbursement for the tuition paid for her junior and senior year of undergraduate education at Seton Hall University. The Court is not granting this request. Plaintiff was able to graduate from Seton Hall University and secure appropriate employment for herself with her undergraduate degree. There is no evidence on the record to demonstrate that Plaintiff lost her academic scholarship due to Defendant's actions.

In total, the Court will award Plaintiff $483,680 in compensatory damages for her past and future treatment expenses to manage the symptoms of her anxiety and panic disorder, which stem from the Defendant's intentional conduct of publicly posting an intimate video of Plaintiff online without her consent. The amount will be reduced by all monies paid by the insurance company, if any.

### Punitive Damages

The New Jersey Punitive Damages Act provides that in determining whether punitive damages are to be awarded, the trier of fact shall consider all relevant evidence, including but not limited to, the following: (1) The likelihood, at the relevant time, that serious

harm would arise from the defendant's conduct; (2) The defendant's awareness or reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct; (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and (4) The duration of the conduct or any concealment of it by the defendant." N.J. Stat. § 2A:15-5.12(b).

Plaintiff requests that the Court award Plaintiff punitive damages after considering the factors set forth in N.J.S.A. 2A:15-5.12(b). Plaintiff argues that it was extremely likely that uploading a video of Plaintiff engaging in a sex act to a pornographic website would cause Plaintiff to experience serious harm. That by expending the time and effort to embed a clear photograph of the Plaintiff's face and her full name into the video, Defendant demonstrated a reckless disregard for the likelihood that such serious harm would arise from his actions. Plaintiff also points to Defendant's conduct upon learning that his actions had caused Plaintiff to experience harm. Plaintiff highlights that Defendant ignored Plaintiff's inquiries, failed to assist with the video's removal, and later spread a harmful rumor that Plaintiff falsely accused him of rape to conceal the nature of his expulsion from Seton Hall University. Finally, Plaintiff alleges that the Defendant's conduct will have indefinite ramifications of harm, as Plaintiff will continuously need to conduct regular and vigilant online searches for the video, as it is common for pornographic videos to reappear online long after their initial posting.

Plaintiff points to cases in other jurisdictions to argue in favor of a large assessment of punitive damages against Defendant. In In re White,[6] an Ohio court awarded $100,000 in punitive damages to the plaintiff after her ex-boyfriend uploaded images of her to a revenge porn

---

[6] The Court acknowledges that Unpublished Opinions, as well as opinions from other jurisdictions, are not binding authority.

website, which caused multiple individuals to approach her online and over the phone. Hoewischer v. White (In re White), 551 B.R. 814, 819 (2016). In Patel v. Hussain,[7] a Texas court awarded $130,000 in punitive damages to the plaintiff after her ex-boyfriend posted a series of secretly recorded and sexually explicit videos of her online. 485 S.W.3d 153, 158 (2016).

The Court distinguishes this matter from Patel v. Hussain, as in the instant matter, the relevant video was recorded with the awareness of both parties. Additionally, the defendant in Patel v Hussain bombarded the plaintiff with a slew of offensive and threatening communications and attempted to hack into the plaintiff's online accounts. Id. at 157. In the instant matter, the Defendant did not engage in such threatening communications and attempted hacking before uploading the relevant video of Plaintiff online. The Court finds that this matter is more similar to In re White, where the defendant, a disgruntled ex-boyfriend posted pornographic content of the plaintiff online and caused the plaintiff to receive concerning correspondence from strangers. Hoewischer,[8] 551 B.R. at 818. As a result, the plaintiff in In re White, like the Plaintiff in this matter, began to experience subsequent emotional distress and anxiety. Id. at 819.

Based on the testimony and evidence presented in this case, the Court awards Plaintiff $100,000 in punitive damages. In arriving at this figure, the Court considered the high probability that serious harm would arise from Defendant's conduct; Defendant's awareness that serious harm would arise as evidenced by his efforts to embed a clear photograph of Plaintiff's

---

[7] The Court acknowledges that Unpublished Opinions, as well as opinions from other jurisdictions, are not binding authority.

[8] The Court acknowledges that Unpublished Opinions, as well as opinions from other jurisdictions, are not binding authority.

face and full name into the video; and the subsequent conduct of Defendant in denying

responsibility for his actions, ignoring Plaintiff, and spreading a false rumor about Plaintiff in

attempt to conceal the nature of his expulsion from Seton Hall University. The Court also

considered the enduring consequences of Defendant's actions. The threat of the video

resurfacing online will continue for the remainder of her life, and Plaintiff will have to remain

continuously vigilant as a result. Plaintiff's fear of exposure to any future partner or her parents

is always present.

### Attorney Fees Plus Costs and Expenses

N.J.S.A.2A:58D-1 permits the Court to award "reasonable attorney's fees and other

litigation costs reasonably incurred" to a plaintiff due to the conduct of a defendant "who . . .

discloses any photograph, film, videotape, recording or any other reproduction of the image of [a

plaintiff] engaged in an act of . . . sexual contact." N.J. Stat. § 2A:58D-1. When determining

what attorney fees and other costs are to be deemed reasonable, New Jersey courts use the

"Lodestar Method" which is "determined by multiplying the number of hours reasonably

expended by the prevailing party's attorneys during the litigation by the attorneys' reasonable

hourly rate." Rendine v. Pantzer, 141 N.J. 292, 316 (1995). New Jersey courts require the "party

seeking an award of fees [to] submit evidence supporting the hours worked and rates claimed."

Id. at 324.

In the instant matter, Daniel S. Szalkiewicz, Esq. has submitted certified time entries to

the Court for services rendered to Plaintiff by Mr. Szalkiewicz and Cali Madia, Esq. at Daniel

Szalkiewicz Associates P.C. Mr. Szalkiewicz has performed 59.00 hours of work on this matter

at a rate of $450 per hour and Ms. Madia has performed 26.40 hours of work on this matter at a

rate of $450 per hour.  In total, the attorneys at Daniel Szalkiewicz Associates P.C. have

rendered $38,430 in legal services to Plaintiff.

The Court will now address the reasonableness of the Attorneys' fees and costs.  In doing

so, the Court will address all factors contained in RPC 1.5(a) as per <u>Rule</u> 4:42(b).

(1)     The time and labor required, novelty and difficulty of the questions involved, and

the skill requisite to perform the legal service properly;

The Court will address the qualifications of the attorneys that have performed legal

services on behalf of the Plaintiff in this matter.

Daniel Szalkiewicz, Esq. has been admitted to practice in New York and New Jersey

since 2010 and his associate, Cali Madia, has been admitted to practice in New York and Florida

since 2013.  Both have extensive experience in internet related privacy matters.  They both

participate in CLE courses, have been named Rising Stars in "Super Lawyer" magazine, and

assert that they provide all of their clients with personalized and skilled attention.

Mr. Szalkiewicz has given lectures throughout the country on internet disclosure actions

and the effect revenge porn and nonconsensual disclosure of images have on the law.  The law

firm filed the first lawsuit under the New York City Administrative Code in this area, and the

firm has several ongoing litigations in New Jersey.

The time and labor involved in this matter is addressed below.  As far as difficulty of the

subject area, if it appears from Mr. Szalkiewicz's Certification that his firm was the first to file a

lawsuit under the New York City Administrative Code in this area, and the firm has several

ongoing cases in litigation in New Jersey.  The Court finds that this area is difficult as this is an

21

emerging body of law in light of the developments in technology. As such, few attorneys practice in this field.

(2)     The likelihood, if apparent to the client to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

There is no information pertaining to what was apparent to the client. However, Mr. Szalkiewicz certified that had his firm not been representing Plaintiff, they would have been fully utilized on other billable client work.

(3)     The fee customarily charged in the locality for similar legal services;

Because this case lasted over four years, the hourly billing rate of the lawyers has changed. The hourly billing rate was $400.00 when this case began in 2016. It increased to $450.00 in 2019 and most recently is $500.00. Both counsel bill at the same rate.

The Court finds, based upon the Court's experience, that the rates charged by Plaintiff's attorneys are reasonable and are the fees customarily charged in the locality for similar legal services for the experience of said attorneys in both New York and New Jersey.

(4)     The amount involved and the results obtained;

As to the results obtained, Plaintiff was successful in the application before the Court. As to the amount of fees involved, see below.

(5)     The time limitations imposed by the client or by the circumstances;

See two above. In addition, counsel had to work quickly and diligently in their efforts to have the video removed from the internet.

(6)     The nature and length of the professional relationship with the client;

Plaintiff retained the Law Firm of David Szalkiewicz and Associates, P.C. since August 2017.

(7)    The experience, reputation, and ability of the lawyer or lawyers performing the services;

See above.

(8)    Whether the fee is fixed or contingent;

The fee is an hourly rate.

The Court has reviewed the invoice consisting of six pages reflecting the billing of services provided to Plaintiff (attached).  The Court finds that the charges are reasonable and customary and is awarding counsel the sum of $38,430 in fees and $561.24 in costs.  The Court is mindful that counsel presented for two proof hearings as the first hearing was heard before Judge Bahir Kamil who retired before a decision was reached.  This Court then requested a second hearing and supplemental briefing.  The Court finds that these attorney fees, costs, and expenses are reasonable and awards Plaintiff $38,991.24 for attorney fees plus expenses.

## CONCLUSION

For the foregoing reasons, the Court rules in Plaintiff's favor on the First Cause of Action for Violation of N.J.S.A. 2A58D-1, the Second Cause of Action for Intentional Infliction of Emotional Distress, and Third Cause of Action for Invasion of Privacy Intrusion Upon Seclusion.  Default judgment is hereby entered against Defendant on all three counts.

Plaintiff is awarded $483,680 in compensatory damages for her past and future treatment expenses relating to her anxiety and panic disorder, which were proximately caused by

Defendant's conduct in posting an explicit video of Plaintiff online without her consent.[9]

Plaintiff is awarded $100,000 in punitive damages in consideration of the factors set forth in

N.J.S.A. 2A:15-5.12(b).  Plaintiff is awarded $38,991.24 in attorney fees plus expenses.

Judgment is hereby entered against Defendant for a total of $622,671.24.

An Order consistent with this Opinion has been entered this date.

Dated: January 23, 2023                              /s/Annette Scoca, J.S.C.
                                                     HON. ANNETTE SCOCA, J.S.C.

---

[9] The medical damages are subject to reduction after application of the existing copayment and/or deductible.