<u>**NOT FOR PUBLICATION**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| S.S.,<br><br>    Plaintiff,<br><br>  v.<br><br>DEZARAE COLLINS,<br><br>    Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br><br>No. 23-0892 (KMW-AMD)<br><br>**OPINION** |

**Daniel Szalkiewicz, Esquire**
Veridian Legal P.C.
23 West 73rd Street, Suite 102
New York, NY 10023
*Counsel for Plaintiff S.S.*

**WILLIAMS, District Judge:**

This matter comes before the Court by way of a hearing to determine the issue of damages following this Court's entry of default judgment in favor of Plaintiff S.S. ("Plaintiff") and against Defendant Dezarae Collins ("Defendant"). For the reasons that follow, the Court will enter Judgment for Plaintiff in the amount of $931,002.31 against Defendant for violation of 15 U.S.C. § 6851 and N.J.S.A. 2A:58D-1.

**I. BACKGROUND**

 **a. Plaintiff's Complaint**

On February 16, 2023, Plaintiff initiated the instant action after Defendant disseminated intimate images and videos of Plaintiff. (*See generally* Compl., Dkt. No. 1.) Plaintiff's Complaint alleges that sometime in 2015, the Parties engaged in a short-term, long-distance relationship during which time Plaintiff sent Defendant several videos and images of his naked body. (Compl. ¶ 13.) Defendant "assured Plaintiff the images would remain private and expressly agreed not to

share them with anyone without Plaintiff's consent." (*Id.* ¶ 1.) When Plaintiff no longer wished to date Defendant, Defendant "embarked on a years-long course of harassment" in 2016, which included continuously calling Plaintiff's workplace, emailing and contacting his current girlfriend on her cell phone and at her place of business, and texting Plaintiff's family members from anonymous phone numbers. (*Id.* ¶¶ 14-15.) For a period of time, Defendant called Plaintiff's family members upwards of 250 times daily. (*Id.* ¶ 17.)

In 2022, Defendant's conduct escalated when she began sending intimate images and videos of Plaintiff to his family members, his girlfriend, and his girlfriend's family. (*Id.* ¶ 18.) The images and videos depicted Plaintiff performing sexual acts and Plaintiff's intimate body parts. (*Id.* ¶¶ 21-37, 46.) Defendant disseminated two videos and twelve images of Plaintiff over 77 times through anonymous text messages over the course of three weeks. (*Id.* ¶ 18.) Plaintiff also posted an intimate image of Plaintiff on Craigslist with the following caption: "Innocent horny man needing company. Last 2 marriages failed. Need somebody to release stress and have fun with. Will send pics and videos. Let me know what you need." (*Id.* ¶ 19.) On January 3, 2023, Plaintiff filed a domestic violence action against Defendant in New Jersey state court. (*Id.* ¶ 20.) The following month, the state court issued a final restraining order "prohibiting [Defendant] from having any communications with Plaintiff, his mother, sister, and girlfriend" and prohibiting Defendant "from harassing, threatening, and stalking the same individuals." (*Id.*)

Plaintiff alleges that due to Defendant's conduct, he has "lost multiple jobs and needed to change his telephone number over 100 times in the past seven years." (*Id.* ¶ 16.) Plaintiff's two-count Complaint alleges that Defendant violated 15 U.S.C. § 6851 by disclosing intimate images of Plaintiff "through text messages using her cell phone/computer" to Plaintiff's family members and online without obtaining Plaintiff's consent. (*Id.* ¶¶ 38-41.) Plaintiff also alleges Defendant

violated N.J.S.A. 2A:58D-1 in distributing images and videos of Plaintiff performing a sexual act and showing Plaintiff's intimate body parts. (*Id.* ¶¶ 46-47.) Plaintiff seeks an award of damages, including "not less than $150,000.00 per . . . intimate image and video shared, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for [his] emotional distress . . . [a]n injunction and order permanently restraining Defendant from disseminating Plaintiff's intimate images and videos without [his] permission or consent[,]" punitive damages, prejudgment interest on all amounts due, an award of costs Plaintiff has incurred in the instant action, and any additional relief as determined by this Court. (*Id.* at 9.)

### b. Subsequent Procedural History

On November 15, 2023, Defendant was served a summons in the instant action. (Dkt. No. 13.) Defendant failed to appear, answer, move, or otherwise respond to Plaintiff's Complaint, precipitating Plaintiff's filing of a request with the Clerk of the Court to enter default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). (Dkt. No. 14.) On December 15, 2023, the Clerk entered default against Defendant. (*Id.*) Thereafter, Plaintiff filed a motion for entry of default judgment against Defendant. (Dkt. No. 15.) The Court granted default judgment in favor of Plaintiff on the issue of liability and ordered a hearing on the issue of damages pursuant to Fed. R. Civ. P. 55(b)(2). (Dkt. Nos. 16, 17.)

### c. Damages Hearing

On August 13, 2024, the Court held a hearing regarding the issue of damages. (Damages Hearing Transcript ("Tr.") dated August 13, 2024.) The Court heard testimony from Plaintiff, his wife, and his sister. Plaintiff testified that he served in the U.S. Marine Corps from 2013 to 2017 in aviation maintenance. (Tr. 16:19-23.) He met Defendant in 2014 and had a relationship with her in 2015 for approximately six months. (Tr. 17:2-6.) He broke up with her in 2015, before he

deployed to engage in humanitarian aid efforts for a typhoon in Guam and Sipan. (Tr. 17:10-15.) From 2015 to 2022, Defendant continued contacting him through hundreds of texts, phone calls, and emails. (Tr. 18:1-9.) Plaintiff testified that he changed his phone number approximately fifty times to stop Defendant from contacting him and stopped using his actual name on all social media accounts. (Tr. 18:12-19.)

Plaintiff filed multiple police reports to end Defendant's harassment. (Tr. 18:20-19:2.) None of the foregoing efforts stopped Defendant from contacting Plaintiff. (Tr. 19:3-4, 21-23.) Plaintiff's counsel entered into evidence copies of the police reports seeking temporary restraining orders ("TROs") against Defendant. (Tr. 19:14-20, 20:10-20; *see* Dkt Nos. 22-2, -3, -4, -6, -19.) Plaintiff testified that text messages sent to himself, his girlfriend, and their families containing his intimate images were sent by Defendant through various phone numbers. (Tr. 22:22-32:17.) Plaintiff also testified that Defendant created a fake Facebook profile of Plaintiff that contained the graphic pictures and a Craiglist add that contained his social security number, date of birth, and phone number. (Tr. 26:13-18, 39:20-40:7.) The images labeled Plaintiff a rapist and pedophile. (Dkt. No 22-18 at 3, *see, e.g.,* Dkt. Nos. 22-10 at 7, 22-11 at 1, 22-12 at 1.) Plaintiff testified that he was diagnosed with PTSD, general anxiety, and "depressive mood swings" because of Defendant's distribution of his intimate images and harassment. (Tr. 32:19-34:10.) Plaintiff described his symptoms as "suffocating," and described losing friends, experiencing strains on his relationships, and shrinking his social circle because of Defendant's harassment. (Tr. 34:11-35:7.)

Plaintiff's then-girlfriend testified that she received numerous text messages from Defendant containing Plaintiff's intimate images, many of which have been entered in evidence under seal. (Tr. 44:2-19; *see* Dkt. No. 22-10.) Within those messages, Defendant repeatedly called Plaintiff a "rapist" and threatened to "find" Plaintiff's wife and "gouge out [her] eyes." (Dkt No.

22-10 at 26.) Plaintiff's wife credibly testified that Defendant stated her goal was to make Plaintiff kill himself and that she "wanted to go to his funeral." (Tr. 47:4-10.) Plaintiff's wife testified that Plaintiff had to incur $15,000 in legal expenses to pursue restraining orders against Defendant and defend "malicious retraining orders" Defendant filed against them. (Tr. 48:50-49:4.) She testified that she was fired from her job at a non-profit because Defendant was calling fifty times every day, and she had to take time off to go to speak with police and attend court hearings to pursue and defend restraining order applications. (Tr. 49:5-24.) She further testified that she feared Defendant discovering that she had a child because of Defendant's efforts to label Plaintiff a pedophile and rapist, which prevented her from posting any pictures of their daughter publicly. (Tr. 48:14-20.)

Plaintiff's sister testified that Defendant would constantly call her on the phone and text her despite being asked repeatedly to stop. (Tr. 51:16-23.) Plaintiff's sister would answer the phone and hear Defendant scream, babble, or pretend to speak other languages. (*Id.*) Defendant would always call from different numbers or unknown blocked numbers, and she could infer that the texts were Defendant because they would come before the phone calls. (Tr. 51:24-52:5.) Plaintiff's sister also testified that Defendant contacted her college lacrosse coach to say horrible things about her, forcing her to defend the allegations to the president of her school and her student athlete alliance. (Tr. 52:10-19.) She further testified that Defendant contacted her place of work numerous times. (Tr. 53:3-6.) Plaintiff's sister received numerous texts from Defendant containing graphic images of her brother. (Tr. 53:17-22.) She filed a police report in response to the harassment. (Tr. 54:14-19.) She also refrained from posting anything about her career online, including LinkedIn, because of Defendant's behavior. (Tr. 54:4-13.)

### d. Supplemental Submissions

On October 28, 2024, Plaintiff submitted supplemental documentation concerning Defendant's financial condition and expert reports from Plaintiff's treating therapist, Asia Eaton, Ph.D., and his treating social worker, Judyann McCarthy, MSW, LCSW. (Dkt. No. 29.) Dr. Eaton's report opines that Plaintiff is a victim of image-based sexual abuse ("IBSA") by Defendant, resulting in PTSD symptomology. (Dkt. No. 29-1 at 8-9.) The report further details the deleterious mental health, social, and physical effects of IBSA on Plaintiff, including feelings of isolation, lost confidence, social ruptures, and distress. (*Id.* at 9-11.) These opinions are further supported by Ms. McCarthy, whose report opines that Plaintiff's life has been "greatly impaired physically, socially and occupationally due to issues stemming from [Defendant's] highly abusive behavior towards him." (Dkt. No. 29-3 at 1.) The supplemental submission includes an invoice for Dr. Eaton's services in the amount of $1,500.00. (Dkt. No. 29-2.)

Plaintiff also submitted a subpoena response from Defendant's employer, the Mid-Willamette Valley Council of Governments, with Defendant's employment records. (Dkt. No. 29-4.) Those records indicate that Defendant works full-time as an "Administration Specialist" at a rate of $30.88 per hour, for an average yearly salary of approximately $64,230.409. (*Id.*)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 authorizes the entry of default judgment against a party that has failed to file a timely responsive pleading. Fed. R. Civ. P. 55(b)(2); *see also Dellecese v. Assigned Credit Sols., Inc.*, No. 15-6678, 2017 WL 957848, at *1 (D.N.J. Mar. 10, 2017). "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp., et al.*, No. 20-9537, 2021 WL 1541054, at *3 (D.N.J. Apr. 20,

2021) (quoting *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011)). With regard to damages, the Court may order or permit the plaintiff to provide additional evidence to support their allegations. *Mancuso v. Tyler Dane, LLC*, No. 08-5311, 2012 WL 1536210, at *2 (D.N.J. May 1, 2012).

The moving party is not entitled to default judgment as a right; rather, the Court may enter a default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." *Dellecese*, 2017 WL 957848, at *2 (quoting *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012)); *see also United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984) (stating that "this court does not favor entry of defaults and default judgments" and noting the court's preference that cases be decided on the merits). Here, the Court has already granted default judgment on the issue of liability—all that remains is to determine whether Plaintiff has proved damages. *See Tri-Union Seafoods, LLC*, 2021 WL 1541054, at *3. With respect to damages, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." *Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-02782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009); *see also Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009) ("In determining the amount, the district court may conduct a hearing.").

## III. DISCUSSION

### a. Compensatory Damages for Violation of N.J.S.A. 2A:58D-1.

N.J.S.A. 2A:58D-1 provides, in pertinent part:

> a. An actor who . . . photographs, films, videotapes, records, or otherwise reproduces in any manner, the image of another person who is engaged in an act of sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court.

> b. An actor who . . . discloses any photograph, film, videotape, recording or any other reproduction of the image of another person who is engaged in an act of sexual penetration or sexual contact, the exposed intimate parts of another person, or the undergarment-clad intimate parts of another person shall be liable to that person, who may bring a civil action in the Superior Court. For purposes of this section: (1) "disclose" means . . . transfer, publish, distribute, circulate, disseminate . . . share, or make available via the Internet . . . and (2) "intimate parts" has the meaning ascribed to it in N.J.S.[A.] 2C:14-1.[1]

*Id.* This Court has already determined that Plaintiff's Complaint articulates the requisite elements of the cause of action created by N.J.S.A. 2A:58D-1 by alleging that the images and videos depict him with his genital area exposed or engaging in a sexual act.

For violating N.J.S.A. 2A:58D-1, the Court may award:

> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

> (2) punitive damages upon proof of willful or reckless disregard of the law;

> (3) reasonable attorney's fees and other litigation costs reasonably incurred; and

> (4) such other preliminary and equitable relief as the court determines to be appropriate.

N.J.S.A. 2A:58D-1.

Here, Plaintiffs have submitted to the Court, under seal, all seventy-seven text messages wherein Defendant disseminated videos and images of Plaintiff. (*See* Dkt. No. 21-18; *see also* Compl., ¶ 18.) While many of the messages were sent from anonymous numbers, the unrefuted record evidence demonstrates that they were disseminated by Defendant, who was the only person

---

[1] Under N.J.S.A. 2C:14-1, "intimate parts" refers to "sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person."

to whom Plaintiff sent the graphic content and who admitted to engaging in the campaign of harassment against Plaintiff.[2] (S.S. Decl. ¶¶ 5, 6.)

It is undisputed that Defendant caused Plaintiff significant harm. Plaintiff suffers from post-traumatic stress disorder ("PTSD"). (Tr. 32:19-34:10; Dkt. No. 29-1 at 8-9.) Plaintiff received treatment from a therapist and licensed clinical social worker and regularly attends therapy sessions. (Dkt No. 29.) Due to the nature of the internet, it is reasonable that Plaintiff will continue to worry that his intimate images will resurface. Plaintiff has submitted an invoice for services from his therapist, Asia Eaton, Ph.D., in the amount of $1,500 (Dkt. No. 29-2). Plaintiff also alleges that he lost multiple job opportunities because he has had to change his number over one-hundred times and take time to file restraining orders and police reports to repel Defendant's harassment. (Dkt. No. 1 at ¶ 16.) However, Plaintiff has not provided proof to support actual damages relating to his loss of employment opportunities, such as the specific jobs and lost earnings. At the damages hearing, his counsel indicated that the majority of the damages sought pertained to non-economic harm, rather than list earnings and the like. (Tr. 12:21-13:1.)

The New Jersey Supreme Court has acknowledged that "[d]amages for emotional distress are by their very nature subjective and difficult to quantify." *Cuevas v. Wentworth Group*, 226 N.J. 480 (2016); *Rendine v. Pantzer*, 141 N.J. 292, 335 (1995) ("The evaluation of emotional distress damages is inherently speculative and not susceptible to precise quantification, for such damages compensate for subjective feelings of humiliation, embarrassment, and indignity."); *Tarr v.*

---

[2] Although the text messages were sent from various phone numbers, Plaintiff's allegation that they were authored by Defendant is undisputed. (*See* Compl. ¶ 8; Dkt. No. 17.) This fact is further evidenced by Defendant's self-references and pattern of texts. For example, in one set of messages, Defendant threatened Plaintiff's wife and asserted that Plaintiff "loves" her more. (Dkt No. 22-10 at 26.) In other messages, Defendant sent pictures of herself and repeated the same message multiple times in a pattern that is consistent across various numbers. (Dkt. No. 22-7.)

*Ciasulli*, 181 N.J. 70, 81 (2004) ("Emotional distress damages are intangible and difficult to measure; their assessment is committed to the sound discretion of the factfinder.").

N.J.S.A. 2A:58D-1(1) establishes a floor for compensatory damages of $1,000.00 per violation of the statute. Because the Court finds that Plaintiff has proved that Defendant violated the statute seventy-seven times, Plaintiff is entitled to a statutory minimum of compensatory damages for violation of N.J.S.A. 2A:58D-1 in the amount of $77,000.00. As Plaintiff has not proved actual damages exceeding this amount, the Court will award Plaintiff statutory damages in the amount of $77,000.00 against Defendant for disseminating graphic content depicting Plaintiff in violation of N.J.S.A. 2A:58D-1 seventy-seven times.

**b. Compensatory Damages for Violation of 15 U.S.C. § 6851.**

As part of the Violence Against Women Act Reauthorization of 2022, Congress provided a civil action for the disclosure of persons' "intimate visual depictions" without their consent under 15 U.S.C. § 6851. The statute provides, in pertinent part:

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States for relief as set forth in paragraph (3).

15 U.S.C. § 6851(b)(1)(A).

Under the Civil Action Relating to Disclosure of Intimate Images ("CARDII"), an "intimate visual depiction" is any photo, video, or other visual image, *see* 18 U.S.C. 2256(5), that depicts, in relevant part, (1) the uncovered genitals or pubic area or (2) the display or transfer of bodily sexual fluids, including an identifiable individual engaging in "sexually explicit conduct." 15 U.S.C. § 6851(a)(5). "Sexually explicit conduct" includes "sexual intercourse," "graphic or

lascivious simulated [ ] masturbation," or "graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)-(B).

The Court has already found that Defendant is liable for violating 15 U.S.C. § 6851 for disclosing intimate visual depictions of Plaintiff "without [Plaintiff's] consent." (Compl., ¶ 4; Dkt. No. 17.) Plaintiff also certifies that he "never gave [Plaintiff his] permission to reshare [the images and videos] with any third party." (Declaration of S.S. ("S.S. Decl.") ¶ 6.) The Court found that Plaintiff has sufficiently set forth that Defendant was the person who possessed and distributed the intimate videos and images of Plaintiff. (Dkt. No. 16.) Plaintiff certifies that Defendant "is the only person [he] shared these images with" and Defendant "admitted to [him] that she was behind the campaign of harassment." (S.S. Decl. ¶¶ 5, 6.) This leaves only the question of damages.

15 U.S.C. § 6851 sets forth the relief available to the depicted individual suing under the statute, as follows:

> In a **civil action** filed under this section--
>
> (i) an individual may recover the actual damages sustained by the individual or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred; and
>
> (ii) the court may, in addition to any other relief available at law, order equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction.

15 U.S.C. § 6851.

Plaintiff seeks an award of damages "not less than $150,000.00 per an intimate image and video shared." (Compl., Dkt. No. 1 at 9.) Notably, CARDII authorizes an individual to recover liquidated damages in the amount of $150,000 "in a civil action." 15 U.S.C. § 6851. Unlike N.J.S.A. 2A:58D-1(1), which provides for $1,000 damages "for each violation of this act," 15

U.S.C. § 6851 does not appear to support an award of liquidated damages in the amount of $150,000.00 per intimate image. If Congress had intended for the liquidated damages amount to pertain to each violation, it would have said so. For example, the Digital Millenium Copyright Act ("DMCA") provides for "statutory damages for *each violation* of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention." 17 U.S.C. § 1203 (emphasis added). Conversely, CARDII does not provide for $150,000 for "each violation," but rather permits the recovery of liquidated damages of $150,000 "in a civil action." 15 U.S.C. § 6851. Thus, the Court can either award Plaintiff liquidated damages in the amount of $150,000 or actual damages pursuant to 15 U.S.C. § 6851.

"The definition of the term 'actual damages' is '[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses.'" *Vallies v. Sky Bank*, 591 F.3d 152, 157 (3d Cir. 2009) (quoting *Black's Law Dictionary* 445 (9th ed. 2009)). Courts have consistently noted that Congress provides for statutory damages in contexts where actual damages are difficult to prove or quantify. *See, e.g., id.* at 158-59 (holding statutory damages "are provided in [the Truth in Lending Act] because actual damages, which require proof that the [plaintiff] suffered a loss in reliance upon the inaccurate disclosure, are extremely difficult to establish."); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 537 (D.N.J. 2008) ("Alternatively, [the Latham Trademark Act,] § 1117(c) provides that on election of the plaintiff or where actual damages cannot be calculated, an award of statutory damages can be awarded."); *Cannon v. Cherry Hill Toyota, Inc.*, 161 F. Supp. 2d 362, 372 (D.N.J. 2001) (finding "[i]t will be especially appropriate to award statutory damages where, as in plaintiff's case, actual quantifiable damages are not susceptible of proof."); *Warburton v. Foxtons, Inc.*, No. 04-2474, 2005 WL 1398512, at

12

*10 (D.N.J. June 13, 2005) ("Congress provided for statutory damages because actual damages in most cases would be nonexistent or extremely difficult to prove.").

Here, Plaintiff has submitted time sheets for the cost of his counseling services, totaling $1,500. (Dkt. No. 29-2.) In addition to his medical expenses, Plaintiff seeks $3 million for past pain and suffering. (Compl., Dkt. No. 1 at 9; *see* Dkt. No. 21 at 3-4.) At the damages hearing, Plaintiff's counsel stated that Plaintiff's economic damages, such as lost wages for time he missed at work and money he spent addressing Defendant's conduct, are less than the $150,000.00 liquidated damages set forth by 15 U.S.C. § 6851. (Tr. 12:21-25.) While the Court acknowledges that Plaintiff was harmed by Defendant's conduct, the Court finds that Plaintiff has not established with reasonable certainty that his actual damages for past pain and suffering exceed the $150,000.00 liquidated damages set forth by 15 U.S.C. § 6851. *See Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund*, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009).

Accordingly, the Court will award Plaintiff $150,000.00 in liquidated statutory damages against Defendant pursuant to 15 U.S.C. § 6851.

### c. Punitive Damages.

While the Court must accept well-pleaded factual allegations as true when considering the entry of a default judgment, that is not the case for a plaintiff's factual allegations regarding damages. *Mancuso*, 2012 WL 1536210, at *2. To ascertain the appropriate amount of punitive damages, courts may permit or order the submission of additional evidence to support the allegations of damages or conduct hearings. *IBEW Loc. 351 Pension Fund*, 2015 WL 778795, at *2; Fed. R. Civ. P. 55(b)(2). Here, the Court has conducted a hearing and ordered supplemental submissions from Plaintiff to establish the appropriate amount of damages.

13

"A trial judge has broad discretion with respect to setting both attorneys' fees and punitive damages." *Bishop v. Gen. Motors Corp.*, 925 F. Supp. 294, 300 (D.N.J. 1996) (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 2, at 14 (5th ed. 1984) ("it is always within the discretion of the jury or trial judge to withhold [punitive damages]"). "Generally, 'punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.'" *Wade v. Colaner*, No. 06-3715, 2010 WL 5479629, at *17 (D.N.J. Dec. 28, 2010) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)).

To determine whether an award of punitive damages comports with due process, courts must consider three guideposts ("*Gore* guideposts"): "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded . . . and the civil penalties authorized or imposed in comparable cases." *Mon Cheri Bridals, Inc. v. Wen Wu*, 383 F. App'x 228, 241 (3d Cir. 2010) (quoting *Campbell*, 538 U.S. at 425); *see also BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 575 (1996).

### a. *Degree of Reprehensibility.*

"The Supreme Court has recognized that the degree of reprehensibility of the defendant's conduct is 'the most important indicium of the reasonableness of a punitive damages award.'" *CGB Occ. Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 190 (3d Cir. 2007) (quoting *Campbell*, 538 U.S. at 419). In evaluating the degree of Defendant's reprehensibility in this case, the Court must consider: "[1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others;

14

[3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.*

Here, the evidence supports at least three of the five subfactors. Defendant's conduct, including not only distributing Plaintiff's intimate pictures but labelling him a rapist and pedophile, and releasing his name and social security number, clearly evinced an indifference to his health and safety. *See id.*; (*see, e.g.,* Dkt. No. 22-18; Tr. 26:13-18, 39:20-40:7.) Defendant's misconduct was far from isolated, as she waged a campaign of harassment against Plaintiff, targeting his sister, mother, then-girlfriend, and his then-girlfriend's parents and relatives, redistributing the intimate content seventy-seven times from various anonymous phone numbers. *See Gore*, 517 U.S. at 575; *Mon Cheri Bridals, Inc.*, 383 F. App'x at 241; (*see* Dkt. Nos. 22-9 to 22-19). Such conduct was undeniably an expression of Defendant's utter malice toward Plaintiff. Notably, Defendant did not act in furtherance of any economic advantage, but sheerly to inflict emotional harm against Plaintiff— during and after his time as an active duty servicemember—with the aim of causing him to kill himself. (Tr. 47:4-10; Dkt. No. 1 at ¶ 14.)

Accordingly, based on this Court's consideration of the reprehensibility guidepost, the Court finds that Defendant's conduct is sufficiently egregious to warrant punitive damages.

### b. Ratio of Punitive Damages to Harm.

Turning to the second *Gore* guidepost, the Supreme Court has "been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *Campbell*, 538 U.S. at 424-25; *see also Gore*, 517 U.S. at 582 ("[W]e have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual *and potential* damages to the punitive

award"). "[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 U.S. at 425. "[A]n award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.*

The Supreme Court has recognized the "long legislative history, dating back over 700 years [in early America and England] and going forward to today, providing for sanctions of double, treble, or quadruple damages to deter and punish," and noted that although "these ratios are not binding, they are instructive." *Id.* Because there are "no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those [the Supreme Court has] previously upheld" may satisfy due process where "a particularly egregious act has resulted in only a small amount of economic damages." *Id.*; *see also Gore*, 517 U.S. at 582 (positing that a higher ratio *may* be necessary where "the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine").

Here, Plaintiff seeks punitive damages in the amount of $5,000,000. (Dkt. No. 21 at 4.) The Court has determined that Plaintiff is entitled to compensatory damages in the amount of $150,000 for violation of 15 U.S.C. § 6851 and $77,000.00 for violation of N.J.S.A. 2A:58D-1, for a total of $227,000.00 in compensatory damages. *See supra*. The Court finds that such a ratio, 22:1, would likely offend due process. *See Campbell*, 538 U.S. at 425. As previously noted, however, a relatively high ratio between compensatory and punitive damages may be appropriate where, as here, egregious conduct resulted in only small economic damages and the monetary value of noneconomic harm inflicted upon Plaintiff is difficult to determine. *Id.*; *see Cuevas*, 226 N.J. at 480; *Rendine*, 141 N.J. at 335; *Tarr*, 181 N.J. at 81.

### c. *Civil Penalties.*

Finally, the *Gore* guidepost requires the Court to compare the punitive damages in this case to verdicts in comparable cases. *See Campbell*, 538 U.S. at 428; *Gore*, 517 U.S. at 575. "This guidepost reflects a 'deference to legislative judgments concerning the appropriate sanctions for the conduct at issue,' and provides notice of possible sanctions to potential violators." *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 237 (3d Cir. 2005) (quoting *Gore,* 517 U.S. at 583). While CARDII does not expressly authorize punitive damages, it permits the Court to award "other relief available at law." 15 U.S.C. § 6851. Notably, N.J.S.A. 2A:58D-1 expressly authorizes "punitive damages upon proof of willful or reckless disregard of the law." Not only was Defendant's conduct in violating the foregoing statutes willful, but the unrefuted evidence also demonstrates that Defendant knowingly violated the TRO enjoining her from contacting Plaintiff or his wife when committing many of those violations. (*See* Dkt. Nos. 22-1, 22-18.) Thus, the Court finds that Defendant had reasonable notice of the possibility of punitive damages for her conduct. *See J.G. v. Jones*, No. 24-08232, 2025 WL 1924347, at \*3 (D.N.J. July 14, 2025) (awarding punitive damages for violations of 15 U.S.C. § 6851 and N.J.S.A. 2A:58D-1).

In awarding punitive damages under New Jersey law, a court must "consider all relevant evidence" relating to the defendant's awareness that "serious harm would arise" from the misconduct, their conduct upon learning the misconduct would cause harm, and the "duration of the misconduct or any concealment of it by the defendant." N.J.S.A. 2A:15-5.12(b)(1)-(4), (c)(1). The Court must also consider the "profitability of the misconduct to the defendant," "when the misconduct was terminated," and "[t]he financial condition of the defendant." N.J.S.A. 2A:15-5.12(c).

As previously noted, overwhelming evidence demonstrates that Defendant's conduct was aimed at causing "serious harm" to Plaintiff, and that such harm was likely to result from that conduct. Defendant not only persisted upon her initial violations of the statutes at issue but doubled down on her efforts by resorting to harassing Plaintiff and his relatives using various phone numbers. These anonymous numbers further evidence an effort by Defendant to harm Plaintiff while attempting to conceal her own culpability in the misconduct. All of these factors strongly support an award of punitive damages against Defendant.

Here, the Court has directed Plaintiff to supplement the record with evidence of Defendant's financial condition. (*See* Dkt. No. 24.) Plaintiff, in turn, subpoenaed Defendant's employer and submitted employment records indicating that Defendant's average yearly salary is approximately $64,230.409. (Dkt. No. 29-4.) Because the record lacks any other evidence of Defendant's net worth, such as her bank account balances, real property, or other assets, the Court does not have a complete picture of Defendant's financial condition. The Court is cognizant, however, that Defendant's refusal to participate in this lawsuit has likely frustrated Plaintiff's ability to ascertain a comprehensive evaluation of Defendant's financial condition.

Courts applying New Jersey law do not permit a defendant's non-cooperation to block adjudication of punitive damages. *See Baker v. National State Bank*, 161 N.J. 220 (1999) (relying on limited financial information available and applying *Gore* factors to determine appropriate punitive damages where complete evaluation of financial condition was "impossible . . . because of [the] defendant's refusal to produce any information"). While the Court must consider "financial condition of the defendant," it "is only one factor in the determination." *Tarr v. Bob Ciasulli's Mack Auto Mall, Inc.*, 390 N.J. Super. 557, 564 (App. Div. 2007), *aff'd,* 194 N.J. 212 (2008). Thus,

the limited evidence of Defendant's financial condition does not preclude the Court from awarding Plaintiff punitive damages.

Here, Plaintiff cites to several verdicts in other "revenge porn" cases to support his claim for punitive damages. First, the Court notes that the majority of the cases cited by Plaintiff are from other jurisdictions and appear to involve violations of "revenge porn" statutes of states other than New Jersey. For example, Plaintiff cites to *M.H. v. E.T.*, No. 161144/20, a case from the New York trial court. (Dkt. No. 19-3.) That case involved a defendant who shared intimate content with a third party and threatened the plaintiff with the prospect of more broadly disseminating it. (Dkt. No. 21.) Like here, the defendant in that case declined to participate in the legal proceedings, forcing the matter to proceed to inquest. (*Id.*) The court awarded $350,000.00 for emotional distress, $646.05 in medical expenses, and future medical expenses in the amount of $110,00.00. (Dkt. No. 19-3.) The court also awarded $850 in expert fees and $25,000.00 in attorneys' fees. (*Id.*) The court awarded punitive damages in the amount of $750,000. (*Id.*) Notably, the ratio of punitive damages to compensatory damages in that case was less than 2:1. (*Id.*)

Plaintiff has provided the verdicts of two New Jersey actions applying N.J.S.A. 2A:58D-1. In *J.M. v. Rozanov*, ESX-L-8892-17, the defendant published an intimate video of the plaintiff on the internet. (Dkt. No. 19-7.) The court awarded the plaintiff compensatory damages in the amount of $483,680.00 in compensatory damages for past and future medical expenses, attorneys' fees and costs in the amount of $38,991.24, and punitive damages pursuant to N.J.S.A. 2A:58D-1(h) in the amount of $100,000.00. (*Id.*) In the other New Jersey case cited by Plaintiff, *S.A. v. Austin*, ESX-L-223-19, the defendant shared three intimate images of the plaintiff online. (Dkt. No. 19-5.) The court awarded statutory damages in the amount of $2,000.00, damages for emotional distress and loss of future earnings in the amount of $3,797,531.00, damages for

19

invasion of privacy in the amount of $500,000, attorneys' fees and costs in the amount of $129,073.91, and punitive damages in the amount of $500,000. (*Id.*)

In another case from this District, *J.G.*, 2025 WL 1924347, at *3, the defendant surreptitiously sent himself intimate pictures of the plaintiff while borrowing her phone and subsequently uploaded them to the internet with personally identifiable information such as her name, workplace, and hobbies. *Id.* at *1. The court awarded the plaintiff a total of $8,737,644.64, comprised of "$326,080 in compensation for her past and future medical expenses," $350,000 in lost earnings, "$3,000,000 in pain and suffering, $61,564.64 in attorney's fees and costs, and $5,000,000 in punitive damages." *Id.* at *3.

Based on the foregoing cases, the Court finds that all of the *Gore* guideposts support an award of punitive damages in this matter. Here, the Court finds that Plaintiff is entitled to statutory damages for violation of N.J.S.A. 2A:58D-1 in the amount of $77,000.00 and liquidated damages for violation of 15 U.S.C. § 6851 in the amount of $150,000.00. The Court notes that this is a particularly egregious case where Defendant has willfully and maliciously violated the law many times in an effort to cause serious harm to Plaintiff. Indeed, Defendant's stated aim was to drive Plaintiff to commit suicide. (Tr. 47:4-10.) The Court finds that punitive damages are appropriate to punish and deter such vile misconduct.

With this in mind, the Court's award of punitive damages in relation to the compensatory damages in this case must nonetheless comport with due process. Although N.J.S.A. 2A:58D-1 does not set forth a specific calculation for the award of punitive damages, the Court notes that in many other contexts, legislatures and courts alike have deemed treble damages appropriate for willful violations of statutes. *See, e.g., Manuel v. NRA Grp. LLC*, 722 F. App'x 141, 144 (3d Cir. 2018) (affirming treble damage award for willful violation of the Telephone Consumer Protection

Act of 1991); *Liberty Mut. Ins. Co. v. Land,* 186 *N.J.* 163, 185 (2006) (NJCFA) ("Treble damages are intended to punish . . . and therefore have all the hallmarks of punitive damages."); *Halo Electronics, Inc. v. Pulse Electronics, Inc.,* 579 U.S. 93 (2016) (holding enhanced damages "up to three times" actual damages are warranted "for egregious infringement behavior" in violation of the Patent Act); *Chanel, Inc. v. Gordashevsky,* No. 05-5270, 2007 WL 316433, at *6 (D.N.J. Jan. 29, 2007) (awarding treble damages for intentional counterfeiting in violation of the Lanham Act); *see also Campbell,* 538 U.S. at 425 (holding the "long legislative history" providing for sanctions of treble damages "to deter and punish" is "instructive" in calculating punitive damages).

Accordingly, considering the *Gore* guideposts and the N.J.S.A. 2A:15-5.12 factors, the Court finds that an award of punitive damages against Defendant in the amount of $681,000—reflecting triple the amount of Plaintiff's statutory damages—is appropriate to punish and deter Defendant's egregious misconduct within the limits of due process.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment (Dkt. No. 15) is **GRANTED**. Judgment will be entered for Plaintiff and against Defendant in the amount of $931,002.31, comprised of statutory damages for violation of N.J.S.A. 2A:58D-1 in the amount of $77,000.00; liquidated damages for violation of 15 U.S.C. § 6851 in the amount of $150,000.00; punitive damages in the amount of $681,000; and attorneys' fees and costs in the amount of $23,002.31.[3] An order consistent with this Opinion will be entered.

Dated: November 12, 2025

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

---

[3] On the record in the damages hearing, the Court granted Plaintiff's application for attorneys' fees and costs pursuant to N.J.S.A. 2A:58D-1(3) and 15 U.S.C. § 6851(i). (Tr. 10:2–11:5.) The Court found that counsel's fee and expenditure of time was reasonable and that a twenty-five percent loadstar enhancement was warranted considering the complexity and novelty of the issues presented. (*Id.*)